May it please the Court, again for the record, I'm Dr. Susan Shott, plaintiff, appellant. The District Court improperly dismissed Dr. Shott's complaint in Shott v. Katz in a decision that overturns a very long line of Supreme Court decisions that concern discrimination and retaliation. These cases include Sullivan, Humphreys, Jackson, Burlington, and Thompson. I should note some very important matters that everybody agrees on here. First, Dr. Shott does have a contractual employment relationship with Rush University Medical Center. Second, Dr. Shott has attempted to enforce her contract related rights in the case that we have just discussed. And the present case is a section 1981 third party retaliation claim against Dr. Katz. It alleges that Dr. Katz retaliated against Dr. Shott for alleging race discrimination against her by Rush. Now there are two significant legal issues here. The first is fairly easily disposed of, I think. That is whether a claim of third party retaliation is cognizable under section 1981 when the retaliation victim has a contractual relationship with the alleged discriminator, but not with the person who retaliated against him. The district court erroneously held that the presence or absence of a contractual relationship between the retaliator and the retaliation victim is a factor that courts must consider when they evaluate these kinds of claims. That issue has already been rather directly decided by this court in Muhammad versus Oliver. In that case, this court cited Vietnamese Fisherman's Association versus Knights of the Ku Klux Klan and who tried to enforce their contracts violate section 1981 even though the Klan is not a party to the contract. I think that's very clear. Unfortunately, the district court apparently was not aware of that. Now the second issue is whether a claim of third party retaliation is cognizable under section 1981 when the third party's retaliation is material, but it's not directly related to the contract between the retaliation victim and the person who allegedly discriminated against him. The district court erroneously held that such claims are not cognizable under section 1981, and it used this error to dismiss Dr. Schott's complaint. I think that principles of stare decisis make it very clear that such claims are, in fact, cognizable under section 1981. The foundation here is, of course, Sullivan, which is a section 1982. It's really a retaliation case, as the Supreme Court has noted. And in this case, Sullivan, like Dr. Schott, complained of race discrimination. Now the Sullivan case is broader because Sullivan complained of race discrimination against another person, Freeman, to whom Sullivan had leased property. And like Dr. Schott, Sullivan was penalized for doing so by material retaliation. In Sullivan's case, a corporation expelled him. Now the corporation's retaliatory act of expelling Sullivan was not directly related to the lease between Sullivan and Freeman. Just as Dr. Katz's retaliatory acts against Dr. Schott were not directly related to an employment contract with Rush. And yet the Supreme Court held, rather emphatically, that Sullivan had standing to bring a section 1982 claim against the corporation that expelled him. And the court stated, if Sullivan is punished for trying to vindicate the rights of minorities protected by section 1982, such a sanction would give impetus to the perpetuation of racial restrictions on property. Sullivan concerns a 1982 claim, but the Supreme Court has repeatedly noted that it has long construed section 1981 and section 1982 alike. Dr. Schott, could I bring the discussion to the specifics of this case? In the Vietnamese fisherman case, obviously we had threats, violence, even murders, if I recall correctly. And we're dealing with legislation from the Reconstruction era, when the concern was about the Ku Klux Klan operating to prevent freed slaves from exercising their rights. If I understand this correctly, your accusations against Dr. Katz are that he refused to continue renewing prescription medications without an exam, and that he declined to do continued academic research with you. Is that right? No, most of that's incorrect. First of all, the only person who ever got hurt in the Vietnamese Fisherman's Association case was a white fisherman, and that's what the murder was. He attacked a Vietnamese fisherman. How about your case? Fought back. How about your case? And so if you look at the record, I have to compare it to the Vietnamese fisherman since you brought it up. Nobody was actually hurt in that case. Nobody was physically harmed. They were scared, and they should have been. There were cross burnings, hangings, an effigy, that kind of stuff. It was very threatening, but they were fine. But nobody got hurt except a white fisherman who was murdered. Justifiable, self-defense. In my case, I was physically hurt. Dr. Katz's grossly misrepresented what happened. It wasn't a demand that I have a physical exam before he would refill my prescriptions. He abruptly withdrew all of my prescriptions and refused to communicate with me in any way for an entire month about that. And that was life-threatening. It caused me horrible pain. I am still much more disabled because of what he did. It's not a, oh, you know, yes, I'll refill your prescriptions, but you have to come in. It is an entire month when I repeatedly emailed him. I emailed his assistant. I know he got the email. She told me that he did, and he refused to provide them for a month to communicate with me in any way. At the end of that month, he said, oh, well, you'll have to come in and have it. Well, he didn't. His assistant did. He said, you have to come in for an exam. That's when that occurred. So the complaint is not the demand for an exam. The complaint concerns the fact that he threatened my life. He caused me severe physical pain, and he caused me severe physical harm, which exists to the present day. What connection does that have to your employment contract with Rush? The point is it doesn't have to. That's the whole point. What connection did what the KKK did to the Vietnamese have to their employment contracts? What does burning a cross do have to do with their contracts? What does pointing guns at them have to do with that? What is hanging figures? None of that has anything directly to do with that. But Dr. Katz made it very clear to me that he disapproved of my complaining about anti-Jewish discrimination by Rush. He made that very clear on multiple occasions. And this act was, I think, clearly in retaliation to that, along with the other acts. And the district court has, and it's inconsistent. If you look at Burlington, for example, which is a Title VII case, but Burlington says that you cannot limit retaliatory acts to employment-related actions. It says a provision limited to employment-related actions would not deter the many forms that effective retaliation can take. Hence, such a limited construction would fail to fully achieve the anti-retaliation provision's primary purpose, namely maintaining unfettered access to statutory remedial mechanisms. The same reasoning leads to the conclusion that material retaliation is sufficient to sustain a Section 1981 claim, even when the retaliatory acts are not directly related to the contractors that are describing the claim. And more recently, in Thompson, the Supreme Court found, with little to no difficulty, 8 to 1, with Judge Scalia, God rest his soul, writing the decision that when an employer fired an employee's fiancé to retaliate against the employee for complaining of discrimination, that that was unlawful under Title VII. Now, what does firing her fiancé have to do with her employment contract with her employer? It didn't have anything to do with this. And yet, the Supreme Court, again, found with little difficulty, 8 to 0, decision written by Justice Scalia, who, God knows, was no flaming liberal. All right? So what we're saying is we overturned Thompson. We overturned Burlington. Somehow, for Section 1981, it's totally different. If it's not totally related to the contract, then it doesn't count. So in other words, if Dr. Katz goes and, you know, goes to Russia and lies about me says I did incompetent work or something like that, that would count. But if he withholds my medical care and almost kills me, literally, causes me severe pain, causes the severe worsening of my disability, and after telling me that he was going to be my physician and it was not a problem and having been my physician for well over 10 years, I don't remember the exact time frame, but it was a very long time, to abruptly do this and to say, oh, that's perfectly legal because it isn't directly related to her employment contract with Rush. That flies in the face of Sullivan, Jackson, Thompson, Burlington, all of that. And the district court has effectively overturned the Supreme Court's long line of decisions, and it is asking this court to do the same thing. This court got it right in Humphreys, most emphatically. The Humphreys decision was affirmed by the Supreme Court. This court stated that the result was compelled by the Civil Rights Act of 1991 in corresponding Supreme Court authority, and it was also the only sensible result. Because if you hold otherwise, what you're saying is somebody, you know, sneaks up and induces a contract violation by lying about somebody, that's illegal under Section 1981. But if they don't break their kneecaps with a baseball bat to get even with them, perfectly legal, no problem, under Section 1981. And that is not sensible. Okay, I'm using up my time, so I will stop. Thank you, Dr. Schott. Mr. Bittman? Thank you, Your Honor. Good morning. On behalf of Dr. Katz, to make and enforce contracts is the sole privilege and right protected by 42 U.S.C. Section 1982. The issues presented by Dr. Schott, as you've just heard them, I'm sorry, Dr. Schott, as just described, have already been decided by the Supreme Court. They've been decided against there. The district court here ruled that 1981 is rooted in contract, and that an action stripped of those roots cannot survive. Dr. Schott's complaint failed because she did not explicitly allege that Dr. Katz took any action that directly, and I say directly, advisedly, that directly caused material harm to Dr. Schott's ability to make and enforce her contract of employment. The medical allegations alone, and Dr. Schott's attempt to leverage that into a contract-related claim, shows a complete misperception of the precepts of 1982. I'm sorry, 1981. Under Rule 12b-6, we're dealing strictly with the allegations within the four corners of the complaint. 12b-6 requires dismissal where the complaint fails to allege facts to state a claim that's plausible on its face. Supported by mere conclusory statements, as this one is, Twombly, Bell Atlantic v. Twombly, and Ashcroft v. Iqbal say the court does not have to give deference to conclusory allegations, particularly when the specific facts are contradictory and they contradict judicial experience. In other words, common sense. The complaint has to be looked at as a whole to see if the allegations tell a story that holds together. No longer is notice pleading sufficient. Now, Schott did, Dr. Schott, I beg your pardon, did allege the conclusion. By refusing to publish research articles with Dr. Schott and refusing to do research with her, Dr. Katz has caused significant damage to Dr. Schott's career. Missing, unfortunately for Dr. Schott, is the factual support required by Twombly and Ashcroft. It must be injury caused by the actions of Katz. What she does allege, however, is inconsistent with the action against Katz. Where she gets specific, she undermines herself. She alleges that Rush employed Dr. Schott, that Rush discriminated against her because she was born Jewish, that Rush discriminated against her even well before Dr. Katz was in the picture, well before Dr. Schott filed Schott v. Rush number one in 94. She alleges that Rush retaliated against her for protesting and suing. As you heard in the courtroom today, that retaliation began well before 94 and continues to this date. Rush did not pay her. Rush did not promote her. Again, well before Schott v. Rush number one was filed. And she still works for Rush. This is not the sort of damage and impairment contemplated by 1981. However, she does also plead that Dr. Katz and she have no contract whatsoever, that they are colleagues, that they are co-workers, that Rush pressured Dr. Katz into not publishing with her, and that Rush then did not pay her or promote her fairly. Mr. Littman, are you aware of any cases in which federal courts have ordered academicians to work with each other in research projects? I cannot imagine such a case, Your Honor. I'm not aware of any. I just was wondering if you were. I was not. I am not. Now, I am very sure the Court is aware of the cat's paw principle. And within that concept, plaintiff has not pleaded that Dr. Katz had the power to make any employment decisions, which would be the direct interference, or the indirect cat's paw, that Dr. Katz caused an unknowing Rush to take action against Dr. Schott, which would be the indirect or cat's paw method. To the contrary, she alleges, animus on the part of Rush, that it chose to discriminate against her, and that based upon that discrimination, Rush chose to pay and promote unfairly. The district court fine-tuned the issue. Did Dr. Katz take any action that directly caused material harm to Dr. Schott's ability to make and enforce her contract of employment? The court answered that no. At paragraph 21 of her complaint, she does allege that Rush put pressure on researchers, and that this discrimination, the discrimination of paragraph 21 by Rush, has been damaging. And paragraph 22 as well. Even these conclusory insufficient allegations contradict her claim that Dr. Katz directly interfered with her ability or injured her contracts. She invents a standard that she knocks down herself, the straw man approach. She says the district court, however, did impose requirements for refiling that she simply cannot meet. This is an unusual case in many respects, but there are some broader principles under section 1981 that are at issue here. Suppose you had an employee suing an employer based on claims of race discrimination, and some of the folks who were being accused of that wrongdoing decided to threaten or beat up the plaintiff in the other case. Would that support a claim under section 1981 against those third parties? It sounds a little bit like the situation under title 7 where the plaintiff then is the interested party or the affected party. It does not sound like a claim under 1981 where the contract is directly with the impaired party. Perhaps I misunderstand the court's question. I'll try to ask it without sounding like a bad movie plot. Plaintiff is an employee suing his employer for race discrimination. His accusations, for example, of hostile environment include a lot of people who are co-workers. Their friends find out about the accusations and decide to take action to help out their friends by threatening or even beating up the plaintiff to try to discourage him from pursuing his lawsuit. They tell him, that's what we want you to do. We want you to drop your lawsuit. He refuses, they beat him up. Is that actionable under 1981? There has to be a causal connection between the actions and intent of the party discriminating and the retaliator. The retaliator is acting based on its perception of the interests of the defendant in the underlying suit. That party who actually engages in the oppressive behavior would have every right to be sued. The plaintiff would have every right to sue that person. But to attribute the actions of a stranger to the contractual relationship is not covered by 1981. So, let's put it this way. Suppose what's happening is an African-American employee asserts a claim under Title VII of the Civil Rights Act. The case gets a lot of coverage. The local chapter of the Ku Klux Klan gets wind of it and decides to teach him a lesson that he shouldn't be bringing that kind of a claim. Threatens and beats him up. Isn't that actionable under Section 1981? Only against the Klan, Your Honor. Yes, that's what I'm talking about. If their action is intended to impair the contractual relationship and it does so, or has the potential to do so. My concern is that this is simply an area where we need to be very careful so that we do not undermine the effectiveness of that Reconstruction Era legislation. Thank you. I believe that takes my time. Thank you. Thank you, Counsel. To address your question, which I think was an excellent one, Burlington and Thompson talk about material retaliation and that is the crux of the matter. That is retaliation that could well dissuade a reasonable person from asserting his contract related rights by complaining about discrimination. That is the contractual impairment here. Section 1981 is not just a Reconstruction Era statute. I gather you've not been discouraged from pursuing your rights. Think about what you're saying. That makes all Section 1981 claims impossible to win because if the person is discouraged from filing the claim, that ends it right there. But if they persevere anyway, then obviously they weren't discouraged so they have no claim. And it doesn't say it discourages everyone. What Burlington says is material retaliation is retaliation that could well dissuade a reasonable person from asserting his contract related rights by complaining about discrimination. Whether stupidity occurs or whatever it is, I have fought very hard for 22 years. This kind of discrimination and retaliation, I think it's wrong. And I think I have a very strong legal basis for doing so. Thank you. Thank you very much for letting me speak today. Thanks to counsel and Dr. Schott. The case will be taken under advisement.